# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on briefs December 13, 2011

## STATE OF TENNESSEE v. JAMES ALLEN WARD

**Appeal from the Hamblen County Circuit Court**
**No. 10CR546     John Dugger, Jr., Judge**

---

**No. E2011-01695-CCA-R3-CD - Filed November 2, 2012**

---

AND

## STATE OF TENNESSEE v. GREGORY DARRYL WANT

**Appeal from the Hamblen County Circuit Court**
**No. 10CR549     John Dugger, Jr., Judge**

---

**No. E2011-01486-CCA-R3-CD**

---

Defendant Ward pled guilty to one count of initiating a process intended to result in the manufacture of methamphetamine, a Class B felony, and Defendant Want pled guilty to one count of initiating a process intended to result in the manufacture of methamphetamine, a Class B felony, and one count of possession of drug paraphernalia, a Class A misdemeanor. Defendant Ward was sentenced to eight years, and Defendant Want was sentenced to eight years for the initiation conviction and to a concurrent eleven months and twenty-nine days for the possession conviction, for a total effective sentence of eight years. Both defendants reserved a certified question of law concerning the legality of a search conducted by police. On appeal, both defendants claim that the trial court erred by failing to suppress items seized pursuant to the warrantless search of Defendant Ward's premises. After carefully reviewing the record and the arguments of the parties, we conclude that the certified question as phrased is not dispositive of the case, and we dismiss the appeals accordingly.

**Tenn. R. App. P. 3 Appeals as of Right; Appeals Dismissed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON,

P.J., and JAMES CURWOOD WITT, JR., J., joined.

Jonathan M. Holcomb, Morristown, Tennessee, for the appellant, James Allen Ward. Greg W. Eichelman, District Public Defender, and R. Russell Mattocks, Assistant Public Defender, for the appellant, Gregory Darryl Want.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; C. Berkeley Bell, District Attorney General; Mr. Dan Armstrong, Assistant District Attorney General, and Ms. Kim Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

On November 1, 2010, Defendant James Allen Ward was indicted on one count of initiating a process intended to result in the manufacture of methamphetamine in violation of Tennessee Code Annotated section 39-17-435(a). Defendant Gregory Darryl Want was indicted on that same date on one count of initiating a process intended to result in the manufacture of methamphetamine in violation of Tennessee Code Annotated section 39-17-435(a) and one count of possession of drug paraphernalia in violation of Tennessee Code Annotated section 39-17-425. Prior to trial, Defendant Want joined a motion filed by Defendant Ward to suppress evidence seized by police during the warantless search of Defendant Ward's home. The trial court took evidence at a pretrial hearing on that motion on March 11, 2011.

At that hearing, Officer David Cribley of the Hamblen County Sheriff's Department testified that on August 24, 2010, he was on duty when he received a 911 call. He testified that the caller reported methamphetamine ("meth") related activity on a certain road. Officer Cribley testified that he drove to a local K-mart and met with the individual who had placed the 911 call. He testified that after he verified this individual's personal information, the individual gave him a specific address and told him that methamphetamine was "actually being cooked at that moment" at the address.

Officer Cribley testified that he went to a *cul-de-sac* where the residence bearing the address given to him by the individual was located. He testified that while he was still in the *cul-de-sac*, he smelled a distinctive smell that he associated with meth labs. He testified that he was able to recognize that particular smell by virtue of his prior involvement with approximately twenty-five calls concerning meth labs. He testified that as a result of his

training, he knew not to approach the suspected meth lab by himself. He testified that he returned to the K-mart parking lot, where he requested backup. Two other officers arrived shortly thereafter.

Officer Cribley testified that these officers accompanied him back to the residence and one of the officers, Detective Statler Collins, went with him to the front door. He testified that they knocked on the front door between midnight and 1:00 a.m. He testified that there was no response to his knock. He also testified that the smell of "cooking meth," which had been "overwhelming from the road," was detectable from the front door.

Officer Cribley testified that he was concerned for the safety of the neighbors and any occupants that might have been present in the house. He also testified that he did not know whether there were children in the vicinity. He testified that he knocked several more times and received no answer. At some point, he heard an individual talking beside the house, in a nearby garage. He testified that this garage was located in the back corner of the house, almost behind it. Officer Cribley was shown and identified several photographs of the house and garage at issue, which he authenticated and which were entered into evidence.

Officer Cribley testified that he and Detective Collins approached the door of the garage. He testified that they knocked on the door, and Defendant Ward answered it. Officer Cribley testified that Defendant Ward appeared "startled" to see him and then said "it's mine, it's mine, and my wife has nothing to do with it." Officer Cribley testified that he read the defendant his *Miranda* rights and requested permission to search the property.

Officer Cribley testified that Defendant Ward never accused him of trespassing and never asked him to leave the premises. Officer Cribley testified that Defendant Ward signed a form giving his consent to police to search the property. He described Defendant Ward's attitude as "amazingly cooperative." Officer Cribley testified that the defendant was not handcuffed prior to signing the consent form and that no guns were drawn.

Officer Cribley testified that he did not see any "No Trespassing" signs on the premises the night that he approached Defendant Ward's residence. However, he acknowledged that photographs taken of the crime scene during the day depicted a "No Trespassing" sign on the property, with the name "Ms. Mary Parker" appearing underneath. Officer Cribley testified that Defendant Ward's name was not on the sign. Officer Cribley testified that photographs also depicted other "No Trespassing" signs located on the property.

Officer Cribley testified that none of the officers involved ever drew their weapons, yelled instructions at Defendant Ward, or "swarm[ed] the garage." Officer Cribley testified that after receiving Defendant Ward's consent, he and his fellow officers donned protective

gear and searched the garage.

On cross-examination, Officer Cribley testified that he was the only individual who received the tip that production of methamphetamine was occurring on Defendant Ward's premises. He testified that he had never previously met the individual who had called in the tip, and he did nothing to establish the reliability of this individual after meeting with him. He testified that after smelling the "acetone smell" outside of Defendant Ward's residence while he was still in the *cul-de-sac*, he went back to the K-mart parking lot and met up with four other officers, all of whom were involved in the ensuing activities. He testified that all of the officers parked approximately a quarter of a mile down the road from Defendant Ward's residence before approaching it on foot.

Officer Cribley was then shown a number of daytime pictures of Defendant Ward's residence. After reviewing these photographs, Officer Cribley agreed that there was a "bright yellow No Trespassing sign" right beside Defendant Ward's driveway. He also acknowledged that there were other "No Trespassing" signs positioned at the front entrance of the residence and next to the house. Officer Cribley testified that he did not see any of these signs because "[i]t was completely dark, pitch black" when the officers approached the residence.

Officer Cribley also clarified that while no officers at the front of the building ever drew their guns, he understood from other officers that some officers located at the back of the building had drawn their weapons while apprehending Defendant Want and another individual that they found exiting from the rear of the building.

Officer Cribley testified that when Defendant Ward answered the door, he asked him to step outside. More specifically, he told Defendant Ward that he smelled what he believed to be a meth lab, and Defendant Ward agreed. Officer Cribley testified that he never requested a search warrant because Defendant Ward was being fully cooperative with him and had given him consent to search the premises.

Officer Cribley testified that there were no other residences located within a quarter of a mile of Defendant Ward's residence. When asked whether he had called an ambulance or the fire department prior to approaching the residence, the witness testified that he was not sure. The trial court then asked the witness "[w]ere you there just doing a knock and talk, or were you there for exigent circumstances or was there a big emergency going on?" Officer Cribley replied, "I would say little bit of both. . . ." When asked why no emergency services had been called if the officer believed that there was an ongoing emergency, the witness replied that he was unsure whether such services had been called, but he could not recall seeing them there.

-4-

On re-direct examination, Officer Cribley testified that he would not have left the meth lab in operation that evening even if he had seen the "No Trespassing" signs. He testified that he would have entered the property anyway because of his concern for the safety of any individuals located on the premises.

Following this testimony, the State rested. The defense called no witnesses. The trial court adjourned and took the matter under advisement. On March 29, 2011, the trial court issued a ruling from the bench concerning the defendants' motion, which had also been joined by another co-defendant, Mr. Michael Todd Prather. The trial court denied the motion, reasoning that the police officers' approach of the residence for purposes of engaging in a consensual "knock and talk" encounter was lawful because they had not been expressly warned against any possible trespassing. In addition, the trial court found that exigent circumstances existed, and these circumstances empowered the officers to enter the property, because "methamphetamine laboratories are highly dangerous and combustible" and such "laboratories can cause serious injuries to persons in and around an active lab site" due to "[i]nhalation of the toxic fumes and vapors." The trial court concluded that under the totality of the circumstances, Officer Cribley had an objectively reasonable belief that the circumstances compelled a need to act swiftly and that there was insufficient time in which to obtain a warrant.

On July 6, 2011, both defendants entered a plea of guilty to charges of initiating a process intended to result in the manufacture of methamphetamine, and Defendant Want pled guilty to possession of drug paraphernalia. Both defendants conditioned their guilty pleas and reserved the same certified question of law. On that same day, Defendant Ward was given an eight-year sentence, and Defendant Want was given an effective eight-year sentence, in the Department of Corrections. Both defendants filed timely notices of appeal of their certified question, which we now review.

**ANALYSIS**

The certified question preserved by the defendants reads in full:

The defendant[s] filed a motion and brief to suppress a search raising issues which are incorporated by reference herein. The court denied the motion, finding the search valid. The issues certified are those presented in the motion to suppress previously filed by the defendant[s], specifically:

A. Did the "knock and talk," as conducted by the Hamblen County Sheriffs [sic] Department constitute an illegal search and seizure in violation of the Fourth Amendment of the United States Constitution as well as article

-5-

1, §7 of the Tennessee Constitution considering:

> B.   The method and manner the Hamblen County Sheriffs [sic] Department conducted the "knock and talk" at the residence of [Defendant Ward].

> C. The initial officers' entry onto [Defendant Ward's] property .

However, before we may endeavor to answer this certified question, we must address the State's argument that the defendant's appeal must be dismissed for failure to preserve a certified question that is dispositive of the case.

As a general rule, a defendant who pleads guilty to a crime has no right to appeal. *See* Tenn. R. Crim. P. 37(b)(2). However, Tennessee permits criminal defendants to bring an appeal after entering a "conditional" guilty plea provided certain requirements are met. *See* Tenn. R. Crim. P. 37(b)(2)(A). One of the primary requirements is that the certified question so preserved be "dispositive of the case." *See id.* The various requirements for properly preserving a certified question have been "strictly construed" by our supreme court, and "the burden is on the defendant to see that these prerequisites are [met]." *State v. Armstrong*, 126 S.W.3d 908, 910 (Tenn. 2003). As our supreme court has explained:

> [W]here questions of law involve the validity of searches and the admissibility of statements and confessions, *etc*., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn.R.Crim.P. 37 have been dismissed because the certified question was not dispositive.

*State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). The State argues that the certified question reserved by the defendants fails to satisfy *Preston* because, as phrased, it is not dispositive of the case. We agree.

The certified question posed by the defendants challenges the applicability of the "knock and talk," or consensual police-citizen encounter, exception to the Fourth

-6-

Amendment's warrant requirement. However, it makes no reference to any lack of exigent circumstances. While the certified question incorporates by reference the arguments contained in the defendant's motion to suppress and his accompanying brief in the trial court, these filings also only address the issue of whether the officers' warrantless entry onto the defendant's premises was constitutionally permissible as a consensual citizen-police "knock and talk" encounter. The State, however, relied on the existence of exigent circumstances in its response to the defendants' motion, and there was testimony on the subject from Officer Cribley in the pretrial hearing. The trial court expressly found that exigent circumstances existed, and expressly held that the exigent circumstances exception to the warrant requirement applied, in the course of denying the defendants' motion to suppress.

Consequently, the fact that there is no discussion of exigent circumstances in the defendant's trial court motion, the accompanying brief, or anywhere else in the certified questioned (as preserved in the trial court's order) is fatal to the defendants' appeal. The question as phrased addresses only the issue of the legality of the search as a "knock and talk." Even if this court were to rule that the consensual police-citizen encounter exception to the warrant requirement did not apply, the search might still be upheld under the exigent circumstances exception. Thus the answer to the defendants' certified question might not be dispositive of the defendants' cases.

The final part of the defendants' certified question does generally mention the officers' initial entry onto Defendant Ward's property. However, if this phrase was intended to raise a challenge to the State's justification of the search under the exigent circumstances exception to the warrant requirement, it was not sufficiently specific to do so.

The defendants' appellate brief discusses exigent circumstances, or lack thereof, in significant detail. However, broad terms contained in a certified question may not be cured by a defendant's narrower assertions in an appellate brief. *See, e.g., State v. Andre Jon Simmons, II*, No. W2011-01004-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 472, at * 14 (Tenn. Crim. App. June 26, 2012). Because the issue sought to be reviewed is not dispositive of the case, the defendants' appeals must be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants' appeals are dismissed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-7-